# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ROBERT MORROW, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 15-0206-CV-W-GAF-P |
| vs. ) | |
| ) | |
| RHONDA PASH, ) | |
| ) | |
| Respondent. ) | |

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined at the Crossroads Correctional Center in Cameron, Missouri, has filed *pro se* this federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2009 convictions and sentences for second-degree murder and armed criminal action, which were entered in the Circuit Court of Cass County, Missouri. Petitioner's convictions were affirmed on direct appeal. Doc. No. 11-9. Petitioner's motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was denied following an evidentiary hearing (Doc. No. 11-11, pp. 50-56), and that denial was affirmed on appeal therefrom (Doc. No. 11-15).

Petitioner raises two grounds for relief: (1) there was insufficient evidence to support his conviction for felony murder; and (2) the trial court erred in allowing the prosecution to use Petitioner's post-*Miranda*[1] silence and request for an attorney as evidence of guilt. Doc. No. 1, pp. 17-22. Respondent contends that both grounds are without merit. Doc. No. 11, p. 3.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**Statement of Facts**

In affirming Petitioner's convictions and sentences, the Missouri Court of Appeals, Western District, set forth the following facts:

> On Sunday, January 28, 2007, Sheldon Haynes ("Victim") left his home at 322 Mulberry in Raymore to go bowling at Premier Bowling in Raytown. That night the victim was wearing two pieces of jewelry: a diamond pinkie ring and a necklace with a white gold "Jesus piece" with yellow diamonds. The victim was bowling with Reginald Perkins, "Rick," "Frank," and some of their girlfriends and children.
>
> Bowling in the lane next to the victim's group were Morrow, his girlfriend Sherita Jackson ("Jackson"), his friend Dwayne Turinteen ("Turinteen"), and Turinteen's girlfriend "Red." Jackson spoke with the victim as they were acquaintances and had attended cosmetology school together several years earlier. Later, Rick, who was intoxicated, bowled a ball down the lane being played by Morrow's group and then made an inappropriate comment to one of the women in the group. Morrow was offended, but the situation was diffused when the victim's group removed Rick from the confrontation. Law enforcement was able to track some of Morrow's activities throughout the evening by tracing the cell phone towers that were accessed by Morrow's cell phone as he made and received calls. Morrow made and received twenty-two calls from his cell phone between 7:33 p.m. and 10:35 p.m. while he was at Premier Bowling Alley, each call using the 83rd Street cell phone tower, a few blocks east of the bowling alley.
>
> Meanwhile Morrow's brother, Wayland Morrow ("Wayland"), and his girlfriend, Casey Flowers ("Flowers"), were using Morrow's white Dodge Durango to do some shopping. Around 9:00 p.m., they finished using the vehicle and dropped it off at Jackson's residence, where Morrow was staying. Flowers then dropped Wayland back at his house and went to work, which began at 10:30 p.m. Morrow and Jackson returned to her apartment at 10:00 p.m. after leaving the bowling alley. Jackson's apartment is located at 3233 Park Street in Kansas City, Missouri. While at Jackson's apartment, Morrow made several calls. Around 11:00 p.m., Morrow called Carlton White ("White"), a relative of Morrow's and a friend of the victim. Morrow complained that Rick had been rude to Jackson at the bowling alley and asked White to call Rick to discuss his behavior.
>
> Cell phone records show that at 11:33 p.m. Morrow called his brother Wayland, and that call used the same cell phone tower on 27th Street that Wayland's cell phone used when he made calls from Jackson's apartment earlier in the evening. By 11:59 p.m., Morrow's cell phone was utilizing cell towers located in Raymore. Morrow called Turinteen at 11:55 p.m., 11:59 p.m., 12:00 a.m., and 12:21 a.m. The final two calls to Turinteen were using a cell phone tower located a few blocks from the victim's home. The final call from Morrow's phone prior to the victim's death was to his brother Wayland; both phones used the tower closest to the victim's home.

2

The victim left the bowling alley at midnight in his dark gray Volvo. Sometime after midnight, Chad Heggem ("Heggem"), who lived in the same subdivision as the victim, noticed a white Dodge Durango stopped outside his home. It was a parked with its lights off but he could see the light of a cell phone and a person in the driver's seat. The Durango remained parked there for a couple minutes. Heggem heard a bang in the distance and then saw the Durango drive past Heggem's home and closer to the home of the victim. The Durango stopped to let an African American male enter the vehicle and then quickly fled. The person who entered the vehicle was wearing a brown Carhart-style jacket and appeared to be heavy set, but Heggem did not get a good look at the person's face.

The victim's fiancé, Michelle Brown ("Brown"), was awakened by her barking dog and then heard a loud noise. She got out of bed and saw someone running away down the street, wearing a dark tan jacket. She saw him get in a white Dodge Durango and drive away.

Jay Humphrey ("Humphrey"), who lived across the street from the victim, woke up when he felt his house shake around 12:30 a.m. He looked outside and saw that a car had struck his house. He told his wife to call 911 and went outside. Humphrey found the victim slumped over in his car and notified Brown at her home.

When police arrived, the victim's car was resting against Humphrey's house still running and in reverse. The driver's window was rolled down and the victim had been shot once in the head. The victim was already dead when paramedics arrived. No jewelry was found on the victim, and the two pieces Brown says he was wearing the night of the murder were never recovered. A single .38 caliber bullet was found inside the front passenger door panel but no shell casing was discovered. Police found the victim's .45 caliber handgun inside the vehicle, between the seats with the safety still engaged.

The next call that night from Morrow's cell phone was at 12:52 a.m., and the signal used the cell tower at 67th and Spruce, moving north from Raymore toward Kansas City. Wayland's phone was recorded as using the Meyer Boulevard/Research Hospital Tower at 12:55 a.m., and finally, by 1:10 a.m., Morrow's phone was using the Prospect tower and Wayland's used the 27th Street tower, consistent with both men arriving back at their respective homes. The following day, January 29, 2007, Morrow had his cell phone disconnected.

Police investigation led them to Morrow as a suspect. Police interviewed Morrow on February 1, 2007, at which time they first searched Morrow's white Dodge Durango with Morrow's consent. No evidence connected to the crime was discovered in that search. Morrow then drove the Durango to the police station where he voluntarily gave an interview. Morrow voluntarily handed over to police his brown jacket for forensic testing, but he would not consent to leave the Durango. The police seized the Durango and obtained a search warrant to seek forensic evidence therein. A small amount of blood was found in the back seat of the

3

> Durango, and DNA tests later revealed the blood came from the victim. Morrow was found guilty by a jury. The court sentenced him to consecutive terms of life in prison for murder and twenty years for armed criminal action . . . .

Doc. No. 11-9, pp. 4-7.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254(e)(1).[2] Because the state court's findings of fact have fair support in the record and because Petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## Ground 1

In Ground 1, Petitioner argues that there was insufficient evidence to support his conviction for felony murder, because the State failed to present sufficient evidence of the underlying robbery. Doc. No. 1, pp. 17-19. Claims of insufficient evidence to support a verdict face "a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012). The first layer of deference is on direct appeal, where "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.'" *Id.* (quoting *Cavazos v. Smith,* 565 U.S. 1 (2011)). A second layer of deference then applies on habeas review, where "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the

---

[2] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

4

federal court disagrees with the state court." *Id.* Rather, "[t]he federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.*

The Missouri Court of Appeals, Western District, denied Ground 1 as follows:

> Felony murder requires the State to show that the victim was killed as the result of the perpetration or attempted perpetration of a felony. Section 565.021.1(2). The underlying felony alleged by the State in the case at bar was robbery in the first degree. Robbery in the first degree requires the State to prove that Morrow forcibly stole property and in the course thereof he either:
>
>> (1) Cause[d] serious physical injury to any person; or
>> (2) [was] armed with a deadly weapon; or
>> (3) use[d] or threaten[ed] the immediate use of a dangerous instrument against any person; or
>> (4) Display[ed] or threaten[ed] the use of what appear[ed] to be a deadly weapon or dangerous instrument.
>
> Section 569.020.1. To prove Morrow forcibly stole property, the State must prove that, in the course of the theft, Morrow:
>
>> Use[d] or threaten[ed] the immediate use of physical force upon another person for the purpose of:
>> (a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or
>> (b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft;
>
> Section 569.010(1). Further, because the evidence did not conclusively establish whether Morrow or an accomplice actually robbed and shot the victim, the State charged Morrow with acting in concert and thus had to present evidence that either before or during the robbery, Morrow "aid[ed] or agree[d] to aid or attempt[ed] to aid such other person in planning, committing or attempting to commit" the robbery. Section 562.041.
>
> First, Morrow claims that "[i]t would require impermissible speculation for the jury to find that the jewelry was taken" by Morrow or another person acting with him by force while armed with a deadly weapon. The evidence established that [the victim] was wearing a valuable ring and a necklace the night he was killed. The victim spoke with a friend on his way home from the bowling alley and made no mention of having lost his jewelry and, therefore, it can be inferred that he still possessed the jewelry at that time. Before he could enter his home, the victim was shot in the head inside his vehicle and killed. Almost immediately after the shooting, the neighbor, into whose house the victim's vehicle crashed after being shot, came out and found the victim dead in his vehicle. Police were called immediately. The

victim's jewelry was not found during the autopsy or in the car, and was never located. "'Intent may be inferred from surrounding facts, such as evidence of defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct, . . . as well as "the type of weapon used, manner and circumstances under which it is used, results, and other relevant factors."'" *Bryant v. State,* 316 S.W.3d 503, 509 (Mo. App. E.D. 2010) (quoting *State v. Mann,* 129 S.W.3d 462, 466 (Mo. App. S.D. 2004)). It is a permissible and reasonable inference from this evidence that the person who shot and killed the victim also stole his jewelry.

Morrow also argues that there was insufficient evidence to prove that Morrow "acted together with or aided another person or persons in committing the first-degree robbery with the purpose of promoting or furthering the commission of that robbery." The evidence showed that Morrow was at the same bowling alley at the same time as the victim, the night of the murder. The victim was wearing the jewelry at the bowling alley. The evidence suggested that this was a planned crime in that cell phone records described in detail how both Morrow and his brother Wayland moved together directly from Kansas City late at night to the scene of the crime in Raymore and back to Kansas City, corresponding to the time of the murder. Eye witness accounts saw the perpetrator, matching a description of Morrow, fleeing the scene of the crime into a waiting white Dodge Durango. An accomplice was located in the Durango while the gunman shot and killed the victim and upon hearing the gunshot, the accomplice drove the Durango closer to the scene of the crime to pick up the perpetrator and fled. Forensic tests concluded that Morrow's white Dodge Durango contained blood belonging to the victim. It is a permissible inference from this evidence that the crime was not random but coordinated and planned with a purpose to steal from the victim.

Further, "'[a] permissible inference of guilt may be drawn from acts or conduct of an accused subsequent to an offense if they tend to show a consciousness of guilt by reason of a desire to conceal the offense or role therein.'" *State v. Pettit,* 976 S.W.2d 585, 591 (Mo. App. W.D. 1998) (quoting *State v. Schwartz,* 899 S.W.2d 140, 144 (Mo. App. S.D. 1995)). After the crime, Morrow had his cell phone disconnected and he tried to convince a witness, Casey Flowers, to give false information pertaining to the use of Morrow's white Dodge Durango the night of the murder. Morrow gave the police false information about his location the night of the murder and the source of the blood in his back seat of his Durango. Efforts to conceal the crime suggest Morrow had knowledge of the events that night and the nature of the crime. Accordingly, a reasonable juror could have concluded beyond a reasonable doubt from the evidence presented at trial that Morrow acted in concert with another to commit robbery in the first degree.

Doc. No. 11-9, pp. 19-22 (alterations to case quotes and statutes in original, "[the victim]" alteration added).

The Missouri Court of Appeals' resolution of Ground 1 is not objectively unreasonable. The

state appellate court applied reasonably the correct standard before concluding that the jury could have concluded beyond a reasonable doubt from the evidence presented at trial that Petitioner acted in concert with another to commit robbery in the first degree. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (constitutional standard for judging sufficiency of the evidence in criminal trials is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"). "In applying this standard, '[t]he scope of our review for a collateral challenge to the sufficiency of the state's evidence is extremely limited. . . We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that conclusion." *Sexton v. Kemna*, 278 F.3d 808, 814 (8th Cir. 2002) (citing *Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994)), *cert. denied*, 537 U.S. 886 (2002). Although Plaintiff argues that "[a]ny number of things could explain what happened" other than a robbery (Doc. No. 1, pp. 19), "[t]he evidence need not exclude every reasonable hypothesis of innocence. . . we may not disturb the conviction if the evidence rationally supports two conflicting hypotheses." *United States v. Anderson*, 78 F.3d 420, 422 (8th Cir. 1996).

Because the state court's determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 1 will be denied.

**Ground 2**

In Ground 2, Petitioner argues that the trial court erred in allowing the prosecution to use Petitioner's post-*Miranda* silence and request for an attorney as evidence of guilt and that the state appellate court used the wrong standard when reviewing this claim on appeal. Doc. No. 1, pp. 20-

7

22. Specifically, Petitioner argues that the state appellate court used the "harmless error" standard when they should have used the "substantial and injurious effect" standard. *Id*. at 20 (citing *Brecht v. Abrahamson*, 507 U.S. 619 (1993)).

"Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Rousan v. Roper*, 436 F.3d 951, 958 (8th Cir.), *cert. denied*, 549 U.S. 835 (2006) (citing *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir.1993). The petitioner must show that "the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Id*.

> The Missouri Court of Appeals, Western District, denied Ground 2 as follows:
>
> . . . Morrow argues the trial court abused its discretion in overruling Morrow's objection to the State's use of his statement during a police interrogation that "'I'll get with my lawyer and he'll probably tell you everything you want to know" because it violated Morrow's right to due process, to counsel, and his right to remain silent and free of self-incrimination in that it is improper for the State to use Morrow's post-*Miranda* silence and request for an attorney as evidence against him.
>
> . . . . During closing arguments, the following exchanges occurred:
>
>> [Prosecutor]: He's breathing hard; wiping sweat from his brow; and when it's all said and done, ladies and gentlemen, he tells the detectives – when they're asking him, Look you got to tell us what happened. You know what happened; tell us - do you know what he says? He says, I'll get with my lawyer and he'll probably tell you everything you want to know.
>> [Defense Counsel]: Objection, we would renew our objection. THE COURT: Overruled.
>> [Prosecutor]: Why in the world would his lawyer be able to do that unless the defendant knew what happened that night? Because the defendant was there that night. He was involved that night, ladies and gentlemen.
>
> . . . .

> In *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S. Ct. 2240, 2245, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that a defendant's silence after receiving his *Miranda* rights cannot be used for impeachment purposes because it is fundamentally unfair and violates the Due Process Clause of the Fourteenth Amendment. Relying on *Doyle's* logic, Missouri courts have held that post-*Miranda* silence cannot be used as evidence to incriminate a defendant. *State v. Dexter,* 954 S.W.2d 332, 339 (Mo. Banc 1997); *State v.Zindel,* 918 S.W.2d 239, 243 (Mo. banc 1996); *State v. Galicia,* 973 S.W.2d 926, 933 (Mo. App. S.D. 1998). "Silence" includes not only a defendant's refusal to speak to police, but also a defendant's request for an attorney. *Wainwright v. Greenfield,* 474 U.S. 284, 295 n. 13, 106 S. Ct. 634, 640 n. 13, 88 L.Ed.2d 623 (1986); *State v. Whitmore,* 948 S.W.2d 643, 647 (Mo. App. W.D.1997); *State v. Tims,* 865 S.W.2d 881, 885 (Mo. App. E.D.l993). A defendant's request for an attorney "' is an effective reclamation of defendant's right to silence . . . .'" *Dexter,* 954 S.W.2d at 339, quoting *Tims,* 865 S.W.2d at 886.

*State v. Wessel,* 993 S.W.2d 573, 576 (Mo. App. E.D. 1999). Regardless of how the State attempts to frame its use of Morrow's statement, the State utilized Morrow's spoken desire that the police obtain further information from his attorney to make an impermissible inference of guilt to the jury. . . . . The admission of this evidence at trial was error.

. . . .

However, "[w]here improper references to a defendant's request for an attorney were erroneously admitted, this court will nevertheless sustain the defendant's conviction if the error is harmless beyond a reasonable doubt," such as when there is overwhelming evidence of guilt. *State v. Whitmore,* 948 S.W.2d 643, 648 (Mo. App. W.D. 1997) (citing *Tims,* 865 S.W.2d at 886; *State v. Martin,* 797 S.W.2d 758, 765 (Mo. App. E.D. 1990)). Here, the victim's DNA was discovered in Morrow's vehicle while Morrow claimed he did not know the victim. Cell phone records were able to track Morrow's movements to the home of the victim in Raymore and back to Kansas City corresponding to the time of the murder while Morrow claimed he was home the entire night of the murder. Morrow clearly mislead the police as to his whereabouts at the time of the crime. Morrow was at the same location as the victim shortly before the murder, and he matched a description (although vague) of the suspect that was seen fleeing the scene of the murder. Further, there was testimony given at trial that Morrow asked a witness in the case to fabricate a story as to the location of his Dodge Durango, which matched a description of the vehicle seen picking up someone fleeing from the direction of the crime scene immediately following the murder. The day after the murder, Morrow got rid of his cell phone he used to make calls that night. Given the overwhelming evidence of Morrow's guilt, the error was harmless beyond a reasonable doubt.

Doc. No. 11-9, pp. 13-17 (alterations added).

9

"[W]hen a state court determines that a constitutional violation is harmless, a federal court may not award habeas relief under § 2254 unless *the harmlessness determination itself* was unreasonable." *Fry v. Pliler*, 551 U.S. 112, 119 (2007) (emphasis in original). Contrary to Petitioner's argument, the state appellate court was not required to apply the "substantial and injurious effect" standard on direct appeal. Instead, the "substantial and injurious effect" is a standard applied by federal courts when reviewing habeas corpus petitions and is more restrictive than the "harmless beyond a reasonable doubt" standard. *See Fry*, 551 U.S. at 120-22 ("We hold that in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht, supra*, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman,* 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705.").

"A 'substantial and injurious effect' occurs when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *See Toua Hong Chang v. Minnesota*, 521 F.3d 828, 832 n.2 (8th Cir.), *cert. denied*, 129 S. Ct. 314 (2008) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "'Grave doubt' exists where the issue of harmlessness is 'so evenly balanced that [the court] feels [itself] in virtual equipoise as to the harmlessness of the error.' *Id.* (alterations in original.

This Court finds that the alleged *Doyle* violation did not have a substantial and injurious effect on the jury's verdict. As set forth in the state appellate court's decision, the state presented overwhelming evidence that Petitioner was involved in the victim's shooting, including, *inter alia*, that the victim's DNA was found in Petitioner's vehicle. Doc. No. 11-9, pp. 13-17. Accordingly, it

was not objectively unreasonable for the state appellate court to conclude that the evidence of Petitioner's guilt rendered the *Doyle* violation harmless.

Because the state court's determinations did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *see* 28 U.S.C. §2254(d)(1) and (2), Ground 2 will be denied.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that:

(1) the petition for writ of habeas corpus is denied;

(2) a certificate of appealability is denied; and

(3) this case is dismissed with prejudice.

/s/ Gary A. Fenner_____
GARY A. FENNER
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated: <u>August 13, 2015</u>.